**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

FIRE INSURANCE EXCHANGE, as a
subrogee of Donald and Julie Crawford,

    Plaintiffs,

v.            CASE NO. 05-70965
              HONORABLE DENISE PAGE HOOD
ELECTROLUX HOME PRODUCTS and
and BEST BUY STORES, L.P.,

    Defendants.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

This matter is before the Court on Defendant Electrolux's Motion for Summary Judgment filed on December 7, 2005, and Defendant Best Buy Stores, L.P.'s Motion for Summary Judgment filed on December 7, 2005.  Plaintiff Fire Insurance Exchange filed Responses to Defendants Electrolux's and Best Buy's Motions for Summary Judgment on December 27, 2005.

Plaintiff's Complaint, removed to this Court by Defendant Electrolux on March 11, 2005 pursuant to 28 U.S.C. § 1441(b), alleges five counts against Defendant Electrolux: Negligence (Count I), Strict Products Liability (Count II), Express Warranty (Count III), Implied Warranty (Count IV), and Failure to Warn (Count V) .  Plaintiff likewise alleges five counts against Defendant Best Buy: Negligence (Count VI),  Strict Products Liability (Count VII), Express Warranty (Count VIII), Implied Warranty (Count IV), and Failure to Warn (Count X).

## II.     STATEMENT OF FACTS

Plaintiff Fire Insurance Exchange is an insurance company authorized to do business in Michigan. (Pl.'s Comp. at ¶ 2). Plaintiff Fire Insurance issued a policy to Donald and Julie Crawford, Plaintiff's subrogors, insuring property located at 11167 Cathy Drive, Goodrich, Genesee County, Michigan 43438. (Pl.'s Comp. at ¶ 2). Defendant Electrolux Home Products, Inc. is a corporation organized under the laws of the State of Ohio, and is a home appliance manufacturer and wholesaler, authorized to do business in Michigan. (Pl.'s Comp. at ¶ 3; Def.'s Notice of Removal, at 3). Defendant Best Buy Stores, L.P. is a retailer authorized to do business in Michigan. (Pl.'s Comp. at ¶ 4).

Shortly after moving into their residence in 1997, Plaintiff's subrogors purchased a White-Westinghouse WD546 dryer manufactured by Defendant Electrolux. (Pl.'s Resp. in Opp'n to Electrolux's Mot. for Summ. J., at 4). Defendant Best Buy delivered and installed the dryer in the Crawford's residence. (Pl.'s Comp. at ¶6). The dryer came with Installation and Operating Instructions, an Owner's Guide and labeling on the dryer itself. (Pl.'s Resp. in Opp'n to Defendant Electrolux's Mot. for Summ. J., at 4). About two weeks prior to February 10, 2004, the Crawfords heard a low, intermittent squeak coming from the dryer during each initial drying cycle. (Pl.'s Resp. in Opp'n to Defendant Electrolux's Mot. for Summ. J., at 5). The dryer otherwise performed normally. (*Id.*) On February 10, 2004, the dryer malfunctioned causing a fire to occur within the dryer. (Pl.'s Comp. at ¶ 8). The fire spread throughout the residence, causing damage to Plaintiff's subrogors' real and personal property, as well as causing Plaintiff's subrogors to incur additional living expenses. (Pl.'s Comp. at ¶ 9). Experts retained on behalf of Plaintiff determined that the origin of the fire was the laundry room and the dryer was the source of the ignition. (Pl.'s Resp. in

Opp'n to Defendant Electrolux's Mot. for Summ. J., at 5).

Pursuant to the insurance policy, Plaintiff Fire Insurance Exchange made payments in excess of twenty-five thousand dollars ($25,000.00) to the Crawfords for the damage to their real and personal property and for their additional living expenses. (Pl.'s Comp. at ¶ 14).

**III.  STANDARD OF REVIEW**

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985). In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party. *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983). But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986):

> [T]he plain language of Rule 56© mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

To create a genuine issue of material fact, the nonmovant must do more than present "some evidence" of a disputed fact. "If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Accordingly, a nonmovant "must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact." *Mathieu v. Chun*, 828 F. Supp. 495, 497 (E.D. Mich. 1993) (citations omitted).

### IV.   APPLICABLE LAW AND ANALYSIS

In its Motion, Defendant Electrolux requests this Court to grant its Motion for Summary Judgment because Plaintiff has failed to establish a prima facie case in this products liability action either on a negligence or a breach of warranty theory. Defendant further asserts that Plaintiff's failure to warn and express warranty claims fail due to the fact that the Plaintiff's subrogors, Donald and Julie Crawford, did not read any of the materials supplied with the Electrolux dryer. As a result, Plaintiff can not demonstrate the requisite showing of a causal connection. Lastly, Defendant asserts that there is no claim for strict tort liability in Michigan.

In its Motion, Defendant Best Buy requests that this Court grant its Motion for Summary Judgment because Plaintiff's claim does not fall within the ambit of Michigan's product liability law applicable to a non-manufacturer seller. Accordingly, Best Buy is not liable for harm allegedly caused by the product and dismissal of the action against it is warranted under Michigan law.

### A.   Electrolux's Motion for Summary Judgment (Counts I-V)

**1. Negligence (Count I)**

**a. Design**

"A manufacturer has a duty to design its product so as to eliminate any unreasonable risk of foreseeable injury." *Fisher v. Kawasaki Heavy Indus., LTD.*, 854 F. Supp. 467, 468 (E.D. Mich. 1994). Manufacturers do not act as insurers indemnifying any and all injuries arising out of the use of their products. *Prentis*, 421 Mich. at 682-83. The Sixth Circuit has interpreted Michigan case law to require a plaintiff to demonstrate the following criteria in order to establish a prima facie case of design defect, known as the risk utility balancing test:

1. That the severity of the injury was foreseeable by the manufacturer;
2. That the likelihood of occurrence of the injury was foreseeable by the manufacturer at the time of distribution of the product;
3. That there was a reasonable alternative design available;
4. That the available alternative design was practicable;
5. That the available and practicable reasonable alternative design would have reduced the foreseeable risk of harm posed by defendant's product; and
6. That omission of the available and practicable reasonable alternative design rendered defendant's product not reasonably safe.

*Hollister v. Dayton Hudson Corp.*, 201 F.3d 731, 738 (6th Cir. 2000). Additionally, in order for a plaintiff to prevail in a cause of action against a manufacturer alleging injury from a defective product[1], the plaintiff must establish "a defect attributable to the manufacturer and causal connection between the defect and the injury or damage . . . ." *Piercefield v. Remington Arms Co.*, 375 Mich. 85, 98-99, 133 N.W.2d 129 (1965). The jury may infer a defect in the product from circumstantial evidence. *See Caldwell v. Fox*, 394 Mich. 401, 410, 231 N.W.2d 46 (1975).

Defendant Electrolux argues that Plaintiff has failed to establish that Defendant Electrolux was negligent in its design of the dryer purchased by the Crawfords. According to Defendant,

---

[1] This also applies to a breach of warranty claim.

Plaintiff's expert, Charles Fricke, is not only unqualified in his expertise and experience, but also has failed to establish the requisite showing of fault on the part of Defendant Electrolux. Plaintiff counters that it has produced sufficient evidence under the applicable risk-utility balancing test to overcome Defendant Electrolux's Motion for Summary Judgment.

It is Defendant Electrolux's contention that Mr. Fricke, an electrical engineer, is unable to identify any defect in the design or manufacture of the dryer, other than to state that when the bearing failed, a fire resulted, and therefore the dryer was unreasonably dangerous. (Def.'s Mot. for Summ. J., at 1, ¶3). Defendant asserts that Plaintiff's expert is limited to testifying "that electricity is capable of causing a fire under certain circumstances." (Def.'s Mot. for Summ. J., at 10, ¶2). Plaintiff contends that, to the contrary, Mr. Fricke testified that the "dryer drum bearing failed, causing the drum to shift and come in contact with the heating element behind it, grounding the drum, energizing the heating element, and causing the heating element to overheat and ignite." (Pl.'s Resp. in Opp'n to Def. Electrolux's Mot. for Summ. J., Ex. C, Fricke Aff.). Additionally, Plaintiff argues, Mr. Fricke is of the opinion,

> that if the heating element had been relocated to the lower left hand corner in the subject dryer . . . the February 10, 2004 fire at issue would not have occurred because the dryer drum would not have come into contact with the heating element when the bearing failed.

As to the factors of the risk-utility balancing test, Plaintiff asserts that based upon Fred Pauk's (a former, long-time employee of Electrolux) testimony that he had seen the same type of failure in the dryer before, that the severity of the injury was foreseeable by Electrolux. Additionally, the likelihood of the injury suffered by the Crawfords at the time of the dryer's distribution was foreseeable as Mr. Fricke, testified that an aging dryer will accumulate highly combustible lint which creates an ignition source when the electrical fault occurs. (Def. Electrolux's Mot. for Summ.

J., Ex. C ).   As to factors three through six, Defendant asserts that Mr. Fricke has not provided evidence that there are reasonable alternative designs available and that its experts, Mr. Pauk and Tom Bajzek, believe that Mr. Fricke's alternative designs are not practicable.  Mr. Fricke asserts that other dryer manufacturers, such as Kenmore and Maytag, placed the heating element in a tube in the lower left hand portion of the dryer, which eliminates the potential for ignition.   (Pl.'s Resp. in Opp'n, Ex. C, Fricke Aff.).  Plaintiff further asserts that because Defendant Electrolux failed to properly locate the heating element within the dryer, this made the dryer not reasonably safe.  The jury could infer that since other manufacturers designed their dryers so that the heating element's placement would not create a  likelihood of fire ignition, Electrolux's dryer had a design defect. There is also evidence from experts retained in this matter that the fire originated in the laundry room and its cause was the failure of the drum bearing, which shifted the drum in such a manner that the drum came in contact with the heating element behind it, creating a fire within the casing of the dryer.  (Pl.'s Resp. in Opp'n to Def. Electrolux's Mot. for Summ. J., at 14).  There is sufficient evidence for the jury to infer that the defect in the dryer caused the fire, resulting in damage to the Crawfords' personal and real property.

Defendant relies on a Sixth Circuit case in support of its theory that Plaintiff's negligence claim must be dismissed because Plaintiff has failed to set forth a reasonable, practical and available alternative.   *See Peck v. Bridgeport Machines*, 237 F. 3d 614 (6th Cir. 2001).   *Peck* is distinguishable from the facts in the instant matter. In holding that the plaintiff failed to make out a prima facie case, the *Peck* Court stated that "an expert who testifies that a product could have been designed differently, but who has never made or seen the alternative design he proposes" can not establish elements three and four of the risk-utility test.  *Id.* at 617.   Mr. Fricke has specifically

7

mentioned other manufacturers' dryers where the heating element was placed in a different location within the dryer which negated the risk associated with Defendant Electrolux's dryer. Defendant states that Plaintiff cannot rebut the fact that the dryer complied with UL 2158. By Defendant's own statement, this evidence is merely admissible to establish that the product is in compliance with industry and government standards. *SEE* MICH. COMP. LAWS § 600.2946(1). As such, Defendant's compliance with industry and government standards does not prove that Defendant was not negligent, as "compliance with industry or governmental standards is merely relevant, not conclusive, evidence of reasonable prudent conduct which the factfinder may consider in its determination of negligence." *Hartford Fire Ins. Co. v. Walter Kidde & Co.*, 120 Mich. App. 283, 292, 328 N.W. 2d 29 (*citing Marietta v. Cliffs Ridge, Inc*., 385 Mich. 364, 369-70; 189 N.W.2d 208 (1971)). Plaintiff has produced sufficient evidence to create a genuine issue of material fact that Defendant Electrolux negligently designed the Crawfords' dryer.

### b. Manufacture

A manufacturer has a duty to manufacture a product to eliminate unreasonable risks of foreseeable injury. *See Fabbrini Family Foods, Inc. v. United Canning Corp*., 90 Mich. App. 80, 93, 280 N.W. 2d 877 (1979). In order for Plaintiff to establish a manufacturing defect, it must show that 1) the product was defectively manufactured, 2) the product reached the plaintiff in the same condition as it was when it left the manufacturer and 3) the defect was the proximate cause of the person's injuries or damages. *See Allstate Ins. Co. v. Icon Health & Fitness, Inc*., 361 F. Supp. 2d 673, 677 (E.D. Mich. 2005)(*citing Prentis v. Yale Mfg*., 421 Mich. 670, 365 N.W.2d 176 (1984). Plaintiff asserts that the issue "is whether Electrolux designed appropriate fails safe for a bearing failure," and not on the design of the bearing alone as Defendant argues. (Pl.'s Resp. in Opp'n to

Def. Electrolux's Mot. for Summ. J., at 6). Defendant's expert, Mr. Pauk, testified that the dryer should have at least a ten year life span, that Electrolux had never incorporated a safety device into the dryer in case of a bearing failure, and that, to his knowledge, the company had never tested the subject dryer's bearing to failure. (Def. Electrolux's Mot. for Summ. J., Ex. H-2, Fred Pauk Tr. at 54-56). The fact that Defendant Electrolux did not have any safety features, and did not perform tests regarding a bearing failure creates a genuine issue of material fact as to whether the dryer was negligently manufactured. *See Allstate*, 361 F. Supp. 2d at 677(Finding that the plaintiff's evidence that the treadmill, which allegedly causes a fire, lacked a properly functioning safety device created a genuine issue of material fact).

The Court finds that Plaintiff has introduced sufficient evidence to create a genuine issue of fact as to whether Defendant Electrolux was negligent in its design and manufacture of the Crawfords' dryer.

### 2.     **Express Warranty (Count III)**

Defendant Electrolux argues that Plaintiff's Breach of Express Warranty claim must fail because Plaintiff cannot establish the requisite element of causation because Plaintiff's subrogors admitted that they did not read any of the express warranties delineated in the Owner's Manual. Plaintiff argues that its subrogors failure to read the Owner's Manual should not be controlling, as reliance is not an element needed to create an express warranty. Michigan statutory law provides:

>  (1)    Express warranties by the seller are created as follows:
> 
>    (a)    An affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmative or promise.
>    (b)    A description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

9

MICH. COMP. LAWS § 440.2313. Plaintiff asserts that the express warranty that Defendant Electrolux breached was that found in the Operating Instructions, stating "that with regular use and care the dryer would provide a long life of service and that the dryer will provide quick and efficient drying of laundered items." (Pl.'s Resp. in Opp'n to Def. Electrolux's Mot. for Summ. J., at 18). This express warranty was breached when the bearing drum failed causing a fire that destroyed Plaintiff's subrogors personal and real property. (*Id.*)

The clear language of the statute requires that the express warranty be "part of the basis of the bargain." Plaintiff's subrogors did not read the materials provided with the subject dryer. Michigan case law has impliedly held that while proof of actual reliance is not necessarily required, some affirmation of fact must be made during the bargaining period for the plaintiff's claim to fall within the purview of the statute. In *Kepling*, the plaintiff was badly burned after grabbing the handle of a frying pan. The plaintiff asserted "that the words "Cold Handle" stamped on the frying pan represented an express warranty that the handle would stay cold." *Kepling v. Schlueter Mfg. Co.*, 378 F. 2d 5, 6 (6th Cir. 1967). The Sixth Circuit held that the plaintiff failed to establish a prima facie case for breach of express warranty, where the plaintiff could not demonstrate he read any printed representations of 'Cold Handle' on the pan or that similar spoken affirmations were made. *Id.*

Plaintiff urges this Court to hold that post-sale affirmations can be enforced as express warranties, and that reliance is not a necessary element of an express warranty claim. Plaintiff cites as support a New York State case. *See Murphy v. Mallard Coach Co.*, 179 A.D. 2d 187, 193 (N.Y. App. Div. 1992). The *Murphy* Court rejected the defendant-manufacturer's argument that in order to be considered the basis of the bargain, a warranty had to be handed over during the negotiation

10

process. I*d.* The *Murphy* Court stated that:

> [T]he fact that [the warranty] was given to plaintiffs at the time they took delivery of the motor home renders it sufficiently proximate in time so as to fairly be said to be part of the basis of the bargain . . . . To accept the manufacturer's argument . . . is to ignore the practical realities of consumer transactions wherein the warranty card generally comes with the goods, packed in the box of boxed items or handed over after purchase of larger, non-boxed goods and accordingly, not available to be read by the consumer until after the item is actually purchased . . . such an interpretation, would, in effect, render almost all consumer warranties an absolute nullity.

*Id.* While not controlling authority, the Court finds this reasoning persuasive. As such, the Court finds that the Michigan statute does not expressly require reliance. Unlike the facts in *Kepling*, here the express warranty is general and is what would reasonably be expected. In *Kepling*, the plaintiff argued that the 'cold handle' express warranty was breached when the plaintiff's wife suffered severe burns after grabbing the pan's handle when grease in the pan caught on fire. *Kepling*, 378 F. 2d at 6. A consumer would not ordinarily expect a frying pan's handle to stay cold during cooking. The Crawfords relied on a general warranty that the dryer would perform as it was intended to; as a dryer. The Crawfords failure to read the warranty does not bar Plaintiff's claim under the Michigan statute.

### 3. Implied Warranty of Merchantability (Count IV)

Defendant argues that the same risk-utility analysis used to determine a manufacturer's liability for a design defect is used for determining whether a manufacturer breached an implied warranty of merchantability. Defendant misstates the law. The Michigan Supreme Court has stated that:

> Since a defective product can reflect negligence in the design or manufacturing process, and can also give rise to a breach of implied warranty, the two theories of liability are often seen as closely related. However, we have noted on several occasions that these indeed are separate causes of action, with different elements . . .the negligence theory generally focuses on the defendant's conduct, . . . while warranty generally focuses upon the fitness of the product, irrespective of the

11

defendant's conduct.

*Lagalo v. Allied Corp.*, 457 Mich. 278, 287, 577 N.W. 2d 462 (1998)(internal citations omitted). A claim for breach of warranty as to the fitness of a product for its intended purpose, requires the plaintiff to show 1) a defect attributable to the manufacturer, 2) when the product left the defendant's control, and 3) this defect caused the plaintiff's injuries. *See Caswell v. Air. Prods. & Chems., Inc.*, 59 F. Supp. 2d 684, 695-96 (E.D. Mich. 199). A plaintiff is not required to prove a specific defect. *Sundberg v. Keller Ladder*, 189 F. Supp. 2d 671, 676 (E.D. Mich. 2002). Plaintiff has presented sufficient evidence to withstand summary judgment on this issue. There is circumstantial evidence of a defect in that a fire started in the Crawfords' laundry room, inside of the subject dryer, and that the fire might not have occurred if the heating element was relocated or if bearing failure tests had been performed by Defendant. There is no dispute that the fire caused damage to the Crawfords' property.

### 4.     Failure to Warn (Count V)

Under Michigan law, a manufacturer has a duty to warn of dangers associated with the intended uses or reasonably foreseeable misuses of the product. *Portelli v. I.R. Constr. Prods. Co.*, 218 Mich. App. 591 (1996); *Peck v. Bridgeport Machines, Inc.*, 237 F. 3d 614, 618 (6th Cir. 2001). To prevail on a failure to warn claim, a plaintiff must show that a manufacturer or seller: 1) had actual or constructive knowledge of the alleged danger; 2) had no reason to believe that consumers would know of this danger; and 3) failed to exercise reasonable care to inform consumers of the danger. *Peck*, 237 F.3d at 619. In a negligence claim, the plaintiff is also required to show causation and damages and where causation is lacking, the question of duty to warn need not be addressed. *Id.*

Defendant Electrolux argues since Plaintiff's subrogors did not read the Owner's or

12

Instruction manuals, Plaintiff can not establish the necessary causal relationship between the alleged failure to warn and the fire. Plaintiff counters that the dryer came with Installation and Operating Instructions, an Owner's Guide and labeling on the dryer itself. Plaintiff states that none of the provided literature stated that if the dryer starts to squeak, the dryer should be taken in for service. As such, it appears that even if Plaintiff's subrogors read the material provided along with the dryer, the needed warning would not have been provided anyway. Plaintiff further argues that Defendant Electrolux's own expert, a former, long-time employee of the company, testified that he had seen the same type of failure in the Electrolux's dryer before. (Dep. of Fred Pauk, at 78-79). Therefore, Plaintiff has established that Defendant Electrolux had "constructive knowledge of the alleged danger." As to the second factor, Plaintiff asserts that Mr. Pauk also testified that the only physical manifestation that there was a problem, was the squeaking noise Plaintiff's subrogors noticed two weeks before the fire. Mr. Pauk further testified that other than the squeaking noise, the dryer was properly working. Due to this, Defendant Electrolux would have no reason to believe that once the dryer began squeaking, the Crawfords would appreciate the danger that a fire would develop. None of the literature provided warned the Crawfords that if the dryer started squeaking, it must be taken in for service because the dryer's drum bearing may fail, which could cause a fire. Plaintiff has presented sufficient evidence to withstand summary judgment on this claim.

  **B. Best Buy's Motion for Summary Judgment**

  Defendant Best Buy argues that under Michigan products liability law, it is not responsible for any harm allegedly caused to Plaintiff's subrogors because a seller other than a manufacturer is not liable for any harm caused by a product, unless the seller fails to exercise reasonable care or if the seller makes an express warranty as to the product. (Def. Best Buy's Mot. for Summ. J., at 6). Defendant Best Buy is not completely correct in its analysis of the applicable Michigan law.

In Michigan, MICH. COMP. LAWS § 600.2947 governs the liability of a non-manufacturer seller of a product:

> (6) In a product liability action, a seller other than a manufacturer is not liable for harm allegedly caused by the product unless . . . the following is true:
>
> (a) The seller failed to exercise reasonable care, including breach of any implied warranty, with respect to the product and that failure was the proximate cause of the person's injuries.
>
> (b) The seller made an express warranty as to the product, the product failed to conform to the warranty, and the failure to conform to the warranty was a proximate cause of the person's harm.

MICH. COMP. LAWS § 600.2947(6)(a) and (b). Under the statute, a plaintiff can recover only if the retailer 1) failed to exercise reasonable care, or 2) breached an implied or express warranty. *See Mills v. Curioni*, 238 F. Supp. 2d 876, 886 (E.D. Mich 2002), *Williams v. KIA Motors Am., Inc.*, 2005 U.S. Dist. LEXIS 40865, *5 (E.D. Mich. 2005).

### 1. Negligence (Count VI)

With the above in mind, Plaintiff's negligence claim against Defendant Best Buy must fail. In order to establish that Defendant Best Buy failed to exercise reasonable care, Plaintiff must first demonstrate that Defendant was aware of, or should have been aware of the product's defective nature. *See Mills*, 238 F. Supp. at 886; *Williams*, 2005 U.S. Dist. LEXIS 40865, at *5. Plaintiff has provided no evidence supporting this essential element. Although Defendant Best Buy delivered and installed the dryer in Plaintiff's subrogors' home, there has been no assertion by Plaintiff that Defendant Best Buy was negligent in its performance of this service. Plaintiff has only provided Defendant Electrolux's former employee, Fred Pauk's testimony that he had seen the same type of failure in the dryer before. This does not demonstrate that Defendant Best Buy "knew or had reason to know the product was defective." *Mills*, 238 F. Supp. at 866.    There is no evidence that

Defendant Best Buy's customers had previously requested repairs on the same type of dryer, nor that its customers complained of, or returned the dryer due to the defect. Defendant Best Buy's Motion for Summary Judgment is granted with respect to this claim.

### 2. Failure to Warn (Count X)

For the same reason that Plaintiff can not establish its negligence claim against Defendant Best Buy, Plaintiff's failure to warn claim will also fail. In order for Plaintiff to prove this claim, it must demonstrate that Defendant Best Buy, 1) had actual or constructive knowledge of the alleged danger; 2) had no reason to believe that consumers would know of this danger; and 3) failed to exercise reasonable care to inform consumers of the danger. *Peck*, 237 F.3d at 619. Since Plaintiff cannot demonstrate the first element, that Defendant Best Buy had actual or constructive knowledge of the defect in the dryer, Plaintiff can not establish a prima facie case against Defendant Best Buy for failure to warn.

### 3. Implied Warranty (Count IX)

Notwithstanding Plaintiff's failure to withstand summary judgment on its negligence and failure to warn claims against Defendant Best Buy, Plaintiff has met its burden in regard to its breach of implied warranty claim. When the defendant is a non-manufacturing seller, the analysis of negligence and breach of implied warranty claims diverge. *Id.*, citing *Prentis v. Yale Mfg. Co.*, 421 Mich. 670 (1984). "Because the existence of a defect is generally determined by the negligent conduct of the manufacturer, a retailer may be held liable for breaching its implied warranty of merchantability by selling a defective product, even if the retailer's conduct is wholly free from negligence. *Hollister*, 201 F. 3d 737. A breach of warranty of merchantability or fitness claim requires Plaintiff to demonstrate that 1) the retailer sold the product in a defective condition; and 2) the defect caused the plaintiff's injury. *Hollister*, 201 F. 3d 737 (citing *Piercefield v. Remington*

15

*Arms Co.*, 375 Mich. 85, 133 N.W.2d 129 (2004). As already discussed above, Plaintiff has submitted enough evidence to create a genuine issue of material fact as to whether Defendant Electrolux sold the dryer in a defective condition. Plaintiff's expert testified that if the dryer had been designed differently so that the heating element did not come into contact with the dryer's drum, the fire would not have started. As already stated, there is no dispute that the fire caused damage to Plaintiff's subrogors personal and real property.

### 4. Express Warranty (Count VIII)

MICH. COMP. LAWS § 600.2947(6)(b) provides for a breach of express warranty claim against a non-manufacturing seller of goods in Michigan. An express warranty is created by a seller by setting forth a promise of affirmation, description or sample with the intent that the goods will conform. *Guaranteed Construction Co. v. Gold Bond Products*, 153 Mich. App. 385, 390 (1986). The existence of an express warranty is typically a jury question, but may provide a question of law for the court if a statement can fairly be characterized as "sales talk." *Hayes Construction v. Silverthorn*, 343 Mich. 421 (1955). Michigan's express warranty statute provides that:

>  (1) Express warranties by the seller are created as follows:
>   (a) An affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmative or promise.
>   (b) A description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

MICH. COMP. LAWS § 440.2313 (2004). Plaintiff argues that Defendant Best Buy breached its express warranty by failing to provide a safe dryer free from defect. (Pl.'s Compl, at 9, ¶47). In its Response to Defendant Best Buy's Motion for Summary Judgment, Plaintiff does not describe where this description was found or how it was the basis of the bargain, instead Plaintiff "reincorporate[d]

all of the law and arguments stated in" its Brief in Opposition to Defendant Electrolux's Motion for Summary Judgment to defend against Defendant Best Buy's Motion for Summary Judgment. (Pl.'s Br. in Opp'n to Def. Best Buy's Mot. for Summ. J. at 7). Without more, this is not enough to create a genuine issue of material fact as to whether Defendant Best Buy breached its express warranty as the Court cannot determine what the exact express warranty was, if it was found on a label on the dryer or if it was among the warranties provided by Electrolux. See Pl.'s Br. in Resp. to Def. Electrolux's Mot. for Summ. J., Ex. A).

### C. Strict Liability (Counts II and VII)

Plaintiff asserts strict liability as a basis for relief against both Best Buy and Electrolux. Defendant Electrolux counters that Michigan does not recognize a cause of action under a theory of strict liability. Plaintiff concedes this fact in its Response in Opposition to Electrolux's Motion for Summary Judgment.

Michigan Courts have not adopted a theory of strict liability. *See Prentis*, 421 Mich. at 683, *Gregory v. Cincinnati Inc.*, 450 Mich. 1, 32, 538 N.W.2d 325 (1995). In fact, the Michigan Court of Appeals has stated that the addition of a strict liability claim to a cause of action alleging theories of negligence and implied warranty would be unnecessarily repetitive.

> In Michigan, two theories of recovery are recognized in product liability cases; negligence and implied warranty. Strict liability has not been recognized as a third theory of recovery. If anything, the proofs that would be presented under a strict liability theory in a product case would overlap with the proofs that would be presented under an implied warranty theory. The addition of the third count adds only confusion, not substance.

*Johnson v. Chrysler Corp.*, 74 Mich. App. 532, 535-36, 254 N.W. 2d 569 (1977).

Notwithstanding Michigan's stance on the subject, Plaintiff asserts that the facts of the present matter present a good faith basis for extending products liability law to include recovery on

17

a theory under strict liability. The Court does not agree. The Michigan Courts have been presented with the opportunity to extend the law, and repeatedly refused to do so. This Court will not substitute its judgment as to the appropriateness of extending Michigan's product liability law. This is the province of the State of Michigan's legislature or judiciary. As such, Plaintiff's claims against both Electrolux and Best Buy cannot proceed under a theory of strict liability.

## V.     CONCLUSION

Accordingly,

IT IS ORDERED that Defendant Electrolux's Motion for Summary Judgment [**Docket No. 21, filed December 7, 2005**] is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that Defendant Electrolux's Motion for Summary Judgment is GRANTED as to Plaintiff's claim for Strict Liability, Count II.

IT IS FURTHER ORDERED that Defendant Electrolux's Motion for Summary Judgment is DENIED as to Plaintiff's claims for Negligence, including Design and Manufacture, Implied and Express Warranty and Failure to Warn, Counts I, III, IV, and V.

IT IS FURTHER ORDERED that Defendant Best Buy's Motion for Summary Judgment [**Docket No. 19, filed December 7, 2005**] is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that Defendant Best Buy's Motion for Summary Judgment is GRANTED as to Plaintiff's claims for Negligence, Strict Liability, Express Warranty and Failure to Warn; Counts VI, VII, VIII, and X.

IT IS FURTHER ORDERED that Defendant Best Buy's Motion for Summary Judgment is DENIED as to Plaintiff's claim for Implied Warranty, Count IX.

Dated: October 11, 2006            /s/ Denise Page Hood
DENISE PAGE HOOD
United States District Court Judge

---

**Proof of Service**

The undersigned certifies that a copy of the foregoing Order Granting in Part and Denying in Part Defendants' Motions for Summary Judgment was served on the attorneys of record herein by electronic means or U.S. Mail on **October 11, 2006**.

s/Kim Grimes
Acting in the absence of
William Lewis, Case Manager

19